MAUREEN PEYTON KING (NY Bar No. 4119376) (pro hac to be submitted)
100 Pearl Street, Suite 20-100
New York, NY 10004-2616
Email: kingmp@sec.gov
Telephone: (212) 336-0111

LOCAL COUNSEL:
Donald Searles, Esq. (CA Bar No. 135705)
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Email: SearlesD@sec.gov
Telephone: (323) 965-4573
Facsimile: (213) 443-1904

Attorneys for Plaintiff
Securities and Exchange Commission

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>ANTHONY SPENCER, KIERSTEN ELLIOTT, AND PAUL ELLIOTT AS TRUSTEE FOR THE SPENCER ELLIOTT LIVING TRUST<br><br>Defendants. | Case No. 2:26-cv-11980<br><br>**FIRST AMENDED COMPLAINT FOR ALTER EGO OR FRAUDULENT TRANSFER LIABILITY**<br><br>**DEMAND FOR JURY TRIAL** |

COMES NOW Plaintiff, United States Securities and Exchange Commission ("SEC"), and for its First Amended Complaint against Defendants Anthony Spencer ("Spencer"); Kiersten Elliott; and Paul Elliott as trustee for the Spencer Elliott Living

Trust ("SELT") (the "Current Trustee") (collectively, "Defendants"). This First Amended Complaint refers to Spencer and Kiersten Elliott in their individual capacities, as the "Spencers" or "Grantors"; and in their capacities as former trustees of SELT, as the "Initial Trustees."

## INTRODUCTION AND SUMMARY

1. This post-judgment collections action arises from the judgment against Spencer in *SEC v. Red Rock Secured, LLC*, No. 2:23-cv-03682 (C.D. Cal.) ("Red Rock Action"). The SEC seeks to satisfy the disgorgement, penalty and interest ordered, at least in part, by collecting from the Current Trustee assets that the Spencers transferred to the Initial Trustees; assets the Initial Trustees transferred to the Current Trustees; and assets the Spencers transferred to the Current Trustee (Kiersten Elliott's father).

2. The SEC seeks assets held by the Current Trustee under three alternative theories: (i) alter ego liability, which would permit the SEC to execute on the assets held by the Current Trustee as the personal assets of Spencer and/or Kiersten Elliott—to the extent of their community property and/or Spencer's assets—because, regardless of the person currently serving as SELT's trustee, SELT's trustee is the alter ego of the Spencers; (ii) as alter egos of the Initial Trustees, the Spencers fraudulently transferred assets they held as Initial Trustees, and/or personally by Spencer or as community property, to the Current Trustee; or (iii) the Spencers fraudulently conveyed assets to the Initial Trustees, and the Initial Trustees and the Spencers fraudulently conveyed those and other assets to the Current Trustee (collectively, "Fraudulent Transfers").

3. On May 15, 2023, the SEC brought the Red Rock Action, a civil enforcement securities fraud action against Spencer and others in the United States District Court for the Central District of California ("Red Rock Court").

4. The SEC alleged in the Red Rock Action that, as head salesman for Red Rock Secured, LLC ("Red Rock")—a gold and silver coin dealer—Spencer defrauded

his customers into liquidating securities in their retirement accounts in order to purchase grossly overpriced coins from Red Rock, in violation of the anti-fraud provisions of the federal securities laws, Section 10(b) of the Securities Exchange Act of 1934 [15 U.S.C. §78j (b)], and Rule 10b-5 thereunder [17 C.F.R. 240.10b-5]; and Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 [15 U.S.C. §§ 80b-6(1) and 80b-6(2)].[1]

5. The parties settled the Red Rock Action and, on April 23, 2024, the Red Rock Court entered a Final Judgment against Spencer on consent, which ordered Spencer to disgorge $2,156,905.15, together with prejudgment interest thereon in the amount of $262,616.15, and a civil penalty in the amount of $580,478.70 ("Final Judgment").

6. Spencer failed to pay the SEC as ordered by the Final Judgment, and on December 8, 2024, the SEC moved the Red Rock Court to hold Spencer in contempt for non-payment.

7. On February 7, 2025, the Red Rock Court granted the SEC's motion, holding Spencer in contempt for non-payment of the Final Judgment (the "Contempt Decision").

8. In rendering the Contempt Decision, the Red Rock Court ordered Spencer to make an initial payment of $1 million within 15 days of entry of the Contempt Decision and enter into a payment plan acceptable to the SEC – neither of which Spencer has done to date.

9. In its Contempt Decision, the Red Rock Court found that Spencer had transferred "millions of dollars in assets to an irrevocable trust [the SELT]…."

10. As of the date of the filing of this First Amended Complaint, more than two years since entry of the Final Judgment, Spencer has paid only approximately

---

[1] On August 11, 2023, the SEC filed its Amended Complaint in the Red Rock Action, which alleged the same violations of the federal securities laws against Spencer.

$21,500 toward the Final Judgment and continues to owe the SEC approximately $3 million.

11. The SEC brings this action to collect at least some of Spencer's debt owed under the Final Judgment from assets held by the Current Trustee, pursuant to the Federal Debt Collection Procedures Act, 28 U.S.C. §§ 3001, *et seq.*; and the California Uniform Voidable Transactions Act ("UVTA") at California Civil Code §§ 3439, *et seq*.

**PARTIES, JURISDICTION, AND VENUE**

12. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1345 (United States as plaintiff), 28 U.S.C. § 1355 (fine, penalty or forfeiture), 28 U.S.C. § 1367 (supplemental jurisdiction), 28 U.S.C. § 3301, et seq. (FDCPA fraudulent transfers), and under the doctrine of ancillary jurisdiction allowing enforcement jurisdiction over a judgment creditor's fraudulent conveyance claims against transferees who were not parties to the underlying action.

13. Pursuant to 28 U.S.C. § 1391, the Central District of California is the proper venue for this proceeding because the events giving rise to the SEC's claims occurred in this district; and because this action is an ancillary proceeding to the Red Rock Action. In addition, venue is proper in this district because all Defendants reside in this district.

14. Defendant Spencer is an individual who resides in Los Angeles, California, who both settled SELT and held the position of Initial Trustee.

15. Defendant Paul Elliott is an individual who resides in Los Angeles, California and whom the SEC names in his capacity as Current Trustee.

16. Defendant Kiersten Elliott, Spencer's wife and Paul Elliott's daughter, is an individual who resides in Los Angeles, California, who both settled SELT and held the position of Initial Trustee.

## FACTUAL ALLEGATIONS

## I. THE SEC RED ROCK ACTION AGAINST SPENCER

17. The Red Rock Action resulted from an SEC investigation (the "SEC Investigation").

18. The first subpoena in the SEC Investigation issued on September 8, 2021.

19. On or about January 28, 2022, as part of the SEC Investigation, the SEC staff issued Spencer a subpoena.

20. As to Spencer, the SEC alleged in the Red Rock Action that, from January 2017 through at least June 2022 (the "Relevant Period"), Spencer persuaded retirement account investors to sell their existing securities and transfer the proceeds into self-directed individual retirement accounts ("SDIRAs") that Red Rock helped its clients establish, and that Spencer convinced them to invest in gold or silver coins. The SEC further alleged in the Red Rock Action that, in advising prospective clients and clients to purchase "premium" coins, Red Rock employees, including Spencer, made false and misleading statements, including that such coins had a market value more than double their actual market value.

21. The SEC further alleged in the Red Rock Action that, directly contrary to the representations of Spencer and others, their fraudulent scheme was designed to lure investors away from relatively liquid retirement account investments (with well-defined and clearly-reported market values), to invest instead in Red Rock's so-called "premium" coins—the actual market value of which, as correctly reported by the SDIRA custodians, was generally less than half the purchase prices clients paid to Red Rock.

22. The SEC further alleged in the Red Rock Action that: (a) during the Relevant Period, Spencer and others sold Red Rock's so-called "premium" coins to at least 700 clients, for a total of more than $50 million; and (b) to fund the purchase of those coins, the 700 clients sold securities in their retirement accounts, transferred more than $50 million in sale proceeds to SDIRAs with Red Rock's assistance, and

purchased the coins from Red Rock through their SDIRAs at Red Rock's repeated urging and with its advice.

23. The SEC and Spencer settled the SEC's claims against Spencer in the Red Rock Action and, on April 23, 2024, the Red Rock Court entered the Final Judgment against Spencer on consent, which ordered, among other things, that Spencer disgorge $2,156,905.15, together with prejudgment interest thereon in the amount of $262,616.15; and pay a civil penalty in the amount of $580,478.70.

## II. THE SEC'S COLLECTION EFFORTS

24. Following entry of the Final Judgment in the Red Rock Action, Spencer failed to pay the SEC.

25. On October 29, 2024, SEC counsel conferred with Spencer's counsel regarding the SEC's intention to file a contempt motion against Spencer in the Red Rock Action due to Spencer's continued failure to pay the Final Judgment in that case.

26. On December 8, 2024, the SEC filed a contempt application against Spencer for his failure to pay the Final Judgment's ordered disgorgement and prejudgment interest, which then totaled $2,419,521.30.

27. On February 7, 2025, the Red Rock Court held Spencer in contempt of the Final Judgment, finding that "his claimed inability to pay was due to his own decision to transfer millions of dollars in assets to an irrevocable trust [the SELT] that Defendant seemingly had unfettered access to, despite not being a trustee or beneficiary."

28. The Red Rock Court declined to sanction Spencer for failing to pay the SEC from the SELT's funds, reasoning that "there is no indication that Defendant [Spencer] has access to the trust."

## III. SPENCER'S EFFORTS TO AVOID HIS CREDITORS

### a. The Spencers Initially Form a Revocable Trust.

29. On July 20, 2015, the Spencers (or "Grantors") formed a revocable trust ("Revocable Trust").

30. Pursuant to the written agreement setting forth the terms of the Revocable Trust ("Revocable Trust Agreement"), the Spencers transferred to the Revocable Trust assets set forth at Exhibit A to the Revocable Trust, consisting of all real, personal, and mixed assets.

31. Section 1.5 of the Revocable Trust Agreement, "Acceptance of Trust by the Trustee" states that "[n]o consideration was or will be given to or by the Trustee for the conveyance or transfer of it to the Trust estate."

32. Sections 1.3 and 1.4 of the Revocable Trust Agreement state that "the Grantors intend that during their joint lives all of the community property of the Grantors now or hereafter contributed to the Trust Estate shall be and remain community property of the Grantors"; and that, reciprocally, "all separate property of one of the Grantors…shall remain the separate property of the Grantor who contributed it…."

**b. The Spencers Form SELT to Attempt to Protect Their Assets from Creditors.**

33. On October 20, 2020, the Spencers settled SELT, an irrevocable trust; became the Initial Trustees; appointed Kiersten's Elliott's sister as trust protector of SELT ("Trust Protector"); and named their two children SELT's sole beneficiaries.

34. SELT's written agreement, dated October 20, 2020, ("SELT Agreement") states that "[t]his irrevocable trust agreement is effective when signed by us."

35. Schedule A to the SELT Agreement sets forth assets transferred to SELT's Trustee in connection with the execution of the SELT Agreement: the real property where they resided, two classic cars, financial accounts, and life insurance policies.

36. The SELT Agreement does not provide for consideration of equivalent value to be transferred to the Spencers in exchange for transferring assets to SELT's trustee, and the Spencers did not receive consideration of equivalent value in

exchange for transferring assets to SELT.

37. Section 1.04 of the SELT Agreement states that the Spencers "retain no right, title or interest in the income or principal of this trust…."

38. SELT Agreement Section 1.06, states in part, "because we do not have the ability to demand or vest any trust assets in ourselves or our estates, we intend that the trust and all trust property be protected from attachment by our creditors"; and that the Spencers intend that "[t]he assets in this trust not be subject to our creditors."

39. Regarding the Spencers' real property held by the Initial Trustees, and now the Current Trustee, SELT Agreement Section 5.01 provides that the Spencers retain a "limited beneficial interest" in SELT, permitting them to: (i) reside in their home "rent and expense free" until December 31, 2024; and (ii) receive discretionary payments from SELT's trustee for any property tax and maintenance payments.

40. The SELT Agreement further states that: "[b]eginning January 1, 2025…the Trustee shall not allow [the Spencers] to live in any personal residence owned by the Trust rent-free…. [The Spencers'] Trustee, in his sole and absolute discretion, may enter into a lease agreement with [the Spencers] to allow us to reside in the real property located at [REDACTED], at reduced rent, but not less than 50% of the fair market value rent."

41. The Initial Trustees were "Interested Trustees" under Section 11.05 of the SELT Agreement, as is the Current Trustee.

42. Sections 5.01(b)(1) and 6.01 of the SELT Agreement limits distributions an "Interested Trustee" can make from SELT property to SELT beneficiaries to an amount "the Trustee determines is necessary or advisable for the beneficiary's health, education, maintenance, or support."

43. Section 10.22 of the SELT Agreement restricts the authority of "Interested Trustees" to make discretionary decisions, stating: "[a]n Interested Trustee may only make discretionary decisions when they pertain to a beneficiary's health, education, maintenance, or support as described under Internal Revenue Code

Sections 2041 and 2514."

44. Section 5.01(b)(1) further restricted distributions by the Initial Trustees by subjecting them to the Spencers' veto power: "Our Trustee's discretion to make distributions is subject to our retained power to veto or prohibit our Trustee from making any distribution to a beneficiary. Our Trustee shall notify us of any proposed distribution, and shall make the distribution at least five days following such notice; provided that neither of us have vetoed the proposed distribution."

45. In or about November 2024, the Trust Protector replaced the Initial Trustees with the Current Trustee (her and Kiersten Elliott's father).

46. Thus, in or about November 2024, the Current Trustee was "authorized [under the SELT Agreement] to acquire, sell, convey, encumber, lease, borrow, manage, and otherwise deal with interests in real and personal property in [SELT'S] name."

**c. The Spencers Contribute Additional Assets to the Initial Trustees.**

47. After the Spencers' initial transfer of assets from the Revocable Trust to the Initial Trustees in 2020, the Spencers transferred additional assets, including their salaries, to the Initial Trustees.

48. Between 2021 and 2024, the Spencers deposited at least hundreds of thousands of dollars into a SELT bank account.

49. For example, Spencer directed that consulting fees he earned ("Consulting Fees") be transferred to the Initial Trustees via an LLC that Spencer controls, Kattaveo, LLC ("Kattaveo"), which has no bank account in its own name.

50. Between October 2023 and October 2024, accounts held by the Initial Trustees received approximately $143,000 in Spencer's Consulting Fees from Kattaveo.

51. By way of further example, in 2024, Spencer also contributed approximately $114,000 in liquidated proceeds of his IRA and 401(k) accounts to accounts held by the Initial Trustees.

52. As of July 2024, documents provided to the SEC by Spencer attribute approximately $1.7 million in assets to SELT (so held by the Initial Trustees), including approximately: $698,000 in the cash surrender value of life insurance; $600,000 in real estate (net of mortgage); $393,000 in cash; and $23,000 in automobiles.[2]

53. At his October 23, 2024 deposition in the Red Rock Action ("Deposition"), Spencer testified that the Spencers held no assets or virtually no assets outside of those in SELT (so held by the Initial Trustees).

**d. The Spencers Used Assets Held by the Initial Trustees to Pay Living Expenses.**

54. The Spencers live in a house titled to the Current Trustee (the "SELT Property").

55. Although the Spencers purport to pay the mortgage on the SELT Property, as of at least July 2025, they did not hold a lease for the SELT Property as required by the SELT Agreement.

56. Spencer admitted at his Deposition that, whenever he sought to disburse SELT funds (so held by the Initial Trustees), he simply accessed such SELT financial account online or withdrew cash from that account.

57. Spencer also admitted at his Deposition that he did not hold assets in his own name sufficiently to pay his monthly expenses and, therefore, used the Initial Trustee's assets to pay personal expenses.

58. As of July 2024, accounts held by the Initial Trustee paid at least 96% of the Spencers' monthly expenses, which were at least $18,700 per month.

59. As of July 2024, Spencer estimated the Spencers' monthly expenses to be about $18,700 per month, or approximately $225,000 annually, including: household costs (including mortgage, taxes, and insurance), medical bills, credit card payments,

[2] Spencer attributed assets titled to the Initial Trustees as assets of the "SELT." Thus, the references herein are to the trustee(s) who held the assets.

educational expenses, utilities, food, transportation costs, and vehicle-related expenses.

60. Between 2021 and 2024, the Spencers disbursed hundreds of thousands of dollars from one SELT bank account, including: (i) to pay franchise tax expenses for Spencer's entity, Kattaveo; (ii) hundreds of thousands of dollars to pay credit card bills; (iii) at least tens of thousands of dollars to pay car expenses, including car payments and Department of Motor Vehicle charges; (iv) $24,000 to the Trust Protector – including a $7,000 check noting "WE LOVE YOU"; and (v) a Father's Day gift of a $500 check to an apparent family member.

**e. The Current Trustee's Efforts to Restrict SEC Recovery of Trust Assets.**

61. On or about March 19, 2025, the Current Trustee initiated an action in the Court of California, County of Los Angeles Probate Court, captioned *In the Matter of The Spencer Elliott Living Trust dated July 15,* 2015, *25STPB03270* ("Probate Action").

62. To represent him in the Probate Action, the Current Trustee retained the law firm of Lurie, Zepeda, Schmalz, Hogan & Martin, A.P.C. ("Trustee Counsel").

63. Through the Probate Action, the Current Trustee sought to reconvey to Spencer either $122,509.22—which he claimed represented Spencer's transfers to the Initial Trustees, and then the Current Trustee, since the date of the Final Judgment in the Red Rock Action—or $216,610.36, which he claimed represented Spencer's transfers to the Initial Trustees, and then the Current Trustee, since the date the SEC filed its complaint against Spencer in the Red Rock Action.

64. Through the Probate Action, the Current Trustee also sought to limit the SEC's right to collect the Final Judgment from assets held by the Current Trustee to, at most, $216,610.36.

65. After the Current Trustee initiated the Probate Action, the SEC intervened and removed the Probate Action to the Central District of California, which

subsequently granted the SEC's motion to dismiss the Probate Action, *Paul Elliott Trustee of the Spencer Elliott Living Trust v. SEC*, 2:25-cv-09062-SVW-SSC (C.D. Cal.) (May 1, 2026 Order, ECF 45).

66. The Current Trustee, through Trustee Counsel, appealed the district court's dismissal of the Probate Action to the Ninth Circuit, *Paul Elliott v. SEC*, No. 26-3556, where the appeal remains pending.

**COUNT I**

**<u>The SEC is Entitled to Collect the Final Judgment from the Current Trustee, as the Current Trustee is the Spencers' Alter-Ego</u>**

67. Plaintiff hereby incorporates and realleges paragraphs 1 through 66 as if fully set forth herein.

68. As individuals and Initial Trustees, the Spencers shared a unity of interest because they treated assets they transferred to the Initial Trustees as their own by living in its real estate, using its cars, and spending its cash.

69. Because a lack of separateness existed between the Spencers as individuals and as the Initial Trustees, the Initial Trustees were alter egos of the Spencers.

70. The Initial Trustees' transfer of assets to the Current Trustee did not, and does not, change the Spencer's status as alter-egos of the person currently functioning as trustee of the SELT.

71. The Current Trustee stepped into the shoes of the Initial Trustees and assumed the status of alter ego of the Spencers.

72. Thus, the Current Trustee is liable to pay the Final Judgment.

**COUNT II**

**28 U.S.C. § 3304(b)(1)(A)**

**<u>Transfers with Intent to Hinder, Delay or Defraud a Creditor</u>**

73. Plaintiff hereby incorporates and realleges paragraphs 1 through 66 as if fully set forth herein.

74. As alleged above, with respect to the Spencers' transfers of assets to the Initial Trustees, those transfers were to their alter ego.

75. The Spencers' and the Initial Trustees' subsequent transfers of assets to the Current Trustee were fraudulent conveyances with actual intent to hinder, delay or defraud a creditor.

76. The following badges of fraud apply and demonstrate the actual fraudulent intent regarding the asset transfers described in the preceding paragraph:

A. The Spencers and Initial Trustees transferred assets to the Current Trustee, who is an insider, namely Spencer's father-in-law (and Kiersten's father), purportedly for the benefit of Spencer's two children;

B. At the time the transfers were made to the Current Trustee, the SEC had filed the Red Rock Action against Spencer;

C. Before the transfers to the Current Trustee were made, the Court entered a Final Judgment against Spencer in the Red Rock Action;

D. One of the SELT Agreement's stated purposes is to avoid creditors;

E. The Spencers retained possession and/or control of at least some property that they purportedly transferred to the Initial Trustees, including use of its cash to pay their monthly expenses, at least one of the classic cars, and Spencer's home; and

F. Neither the Spencers nor the Initial Trustee received from the Current Trustee value reasonably equivalent to the value of the assets they transferred to the Current Trustee.

77. Thus, the transfers described in paragraph 69 were fraudulent under 28 U.S.C. §3304(b)(1)(A).

**COUNT III**

**28 U.S.C. § 3304(b)(1)(A)**

**Transfers with Intent to Hinder, Delay or Defraud a Creditor**

78. Plaintiff hereby incorporates and realleges paragraphs 1 through 66 as if fully set forth herein.

79. If, in the alternative, the Spencers were not alter egos of the Initial Trustees, their transfers of assets to the Initial Trustees, and their later transfers of assets to the Current Trustee, were fraudulent conveyances with actual intent to hinder, delay, or defraud a creditor.

80. Several badges of fraud regarding the asset transfers described in the preceding paragraph are present, including:

A. One of the SELT Agreement's stated purposes is to avoid creditors;

B. The Spencers made transfers to insiders, the Initial Trustees, purportedly for the benefit of the Spencers' two children;

C. The Spencers retained possession and/or control of at least some property that they purportedly transferred to the Initial Trustees, including use of its cash to pay their monthly expenses, at least one of the classic cars, and Spencer's home;

D. The Spencers formed SELT during the period of Spencer's fraud alleged in the Red Rock Action;

E. The Spencers made at least some of the transfers after Spencer became aware of the SEC Investigation;

F. The Spencers made at least some of the transfers after the SEC filed the Red Rock Action against Spencer;

G. The Spencers did not receive from the Initial Trustees, or the Current Trustee, value reasonably equivalent to the value of the assets they transferred;

H. The Spencers' asset transfers to the Initial Trustees ultimately constituted at least most of Spencer's assets;

I. The Spencers were insolvent, or became insolvent, as a result of at least certain of their asset transfers; and

J. Some of the Spencers' asset transfers occurred shortly before or shortly after Spencer incurred a substantial debt, namely the Final Judgment against him in the Red Rock Action.

81. Thus, the transfers described in paragraph 73 were fraudulent under 28 U.S.C. § 3304(b)(1)(A).

**COUNT IV**

**28 U.S.C. § 3304(b)(1)(B)(ii)**

**Transfers for Less than Equivalent Value**

**with Awareness of Impending Inability to Pay Debts**

82. Plaintiff hereby incorporates and realleges paragraphs 1 through 66 as if fully set forth herein.

83. The Spencers transferred to the Initial Trustees at least a substantial amount of the assets in which they had an interest.

84. The Spencers did not receive reasonably equivalent value in exchange for transferring their assets to the Initial Trustees.

85. Likewise, when the Initial Trustees transferred assets, and when the Spencers transferred assets, to the Current Trustee, they did not receive a reasonably equivalent value in exchange for transferring their assets.

86. At the time the Spencers transferred assets to the Initial Trustees and the Current Trustee, they intended to incur—or believed, or reasonably should have believed, that they would incur—debts beyond their ability to pay as they became due.

87. Thus, the transfers from the Spencers to the Initial Trustees and the Current Trustee, as described in paragraphs 78 and 79, were fraudulent transfers under 28 U.S.C. § 3304(b)(1)(B)(ii).

**COUNT V**

**28 U.S.C. § 3304(a)(1)**

**Debt Arising Before Transfer and Insolvency**

88. Plaintiff hereby incorporates and realleges paragraphs 1 through 66 as if fully set forth herein.

89. Spencer's debt to the SEC under its Final Judgment in the Red Rock Action arose before at least some of his asset transfers to the Initial Trustees and the Current Trustee pursuant to the SELT Agreement.

90. Spencer and Kiersten Elliott did not receive reasonably equivalent value for the asset transfers to the Initial Trustees and the Current Trustee described in the preceding paragraph.

91. Spencer was insolvent at the time of the Spencers' transfers of assets to the Initial Trustees and the Current Trustee, or he became insolvent as a result of those transfers.

92. Thus, the Spencers' transfers of assets to the Initial Trustees and the Current Trustee, as described in paragraph 84, were fraudulent transfers under 28 U.S.C. § 3304(a)(1).

**COUNT VI**

**Cal. Civ. Code § 3439.04(a)(1)**

**Transfers With Intent to Hinder, Delay, or Defraud a Creditor**

93. Plaintiff hereby incorporates and realleges paragraphs 1 through 66 as if fully set forth herein.

94. As alleged above, with respect to the Spencers' transfers of assets to the Initial Trustees, those transfers were to their alter ego.

95. The Spencers' and the Initial Trustees' subsequent transfers of assets to the Current Trustee were fraudulent conveyances with actual intent to hinder, delay or defraud a creditor.

96. The following badges of fraud apply and demonstrate the actual fraudulent intent regarding the asset transfers described in the preceding paragraph:

A. The Spencers and Initial Trustees transferred assets to the Current Trustee, who is an insider, namely Spencer's father-in-law (and

Kiersten's father), purportedly for the benefit of Spencer's two children;

B. At the time the transfers were made to the Current Trustee, the SEC had filed the Red Rock Action against Spencer;

C. Before the transfers to the Current Trustee were made, the Court entered a Final Judgment against Spencer in the Red Rock Action;

D. One of the SELT Agreement's stated purposes is to avoid creditors;

E. The Spencers retained possession and/or control of at least some property that they purportedly transferred to the Initial Trustees, including use of its cash to pay their monthly expenses, at least one of the classic cars, and Spencer's home; and

F. Neither the Spencers nor the Initial Trustee received from the Current Trustee value reasonably equivalent to the value of the assets they transferred to the Current Trustee.

97. Thus, the transfers described in paragraph 89 were fraudulent under Cal. Civ. Code § 3439.04(a)(1).

**COUNT VII**

**Cal. Civ. Code § 3439.04(a)(1)**

**Transfers With Intent to Hinder, Delay, or Defraud a Creditor**

98. Plaintiff hereby incorporates and realleges paragraphs 1 through 66 as if fully set forth herein.

99. If, in the alternative, the Spencers were not alter egos of the Initial Trustees, their transfers of assets to the Initial Trustees, and their later transfers of assets to the Current Trustee, were fraudulent conveyances with actual intent to hinder, delay, or defraud a creditor.

100. Several badges of fraud regarding these asset transfers described in the preceding paragraph are present, including:

A. One of the SELT Agreement's stated purposes is to avoid creditors;

B. The Spencers made transfers to insiders, the Initial Trustees, purportedly for the benefit of the Spencers' two children;

C. The Spencers retained possession and/or control of at least some property that they purportedly transferred to the Initial Trustees, including use of its cash to pay their monthly expenses, at least one of the classic cars, and Spencer's home;

D. The Spencers formed SELT during the period of Spencer's fraud alleged in the Red Rock Action;

E. The Spencers made at least some of the transfers after Spencer became aware of the SEC Investigation;

F. The Spencers made at least some of the transfers after the SEC filed the Red Rock Action against Spencer;

G. The Spencers did not receive from the Initial Trustees, or the Current Trustee, value reasonably equivalent to the value of the assets they transferred;

H. The Spencers' asset transfers to the Initial Trustees ultimately constituted at least most of Spencer's assets;

I. The Spencers were insolvent, or became insolvent, as a result of at least certain of their asset transfers; and

J. Some of the Spencers' asset transfers to the Initial Trustees occurred shortly before or shortly after Spencer incurred a substantial debt, namely the Final Judgment against him in the Red Rock Action.

101. Thus, the transfers described in paragraph 93 were fraudulent under Cal. Civ. Code § 3439.04(a)(1).

**COUNT VIII**

**Cal. Civ. Code § 3439.04(a)(2)**

**Transfers for Less Than Equivalent Value**

**with Awareness of Impending Inability to Pay Debts**

102. Plaintiff hereby incorporates and realleges paragraphs 1 through 66 as if fully set forth herein.

103. The Spencers transferred to the Initial Trustees at least a substantial amount of the assets in which they had an interest.

104. The Spencers did not receive reasonably equivalent value in exchange for transferring their assets to the Initial Trustees.

105. Likewise, when the Initial Trustees transferred assets, and when the Spencers transferred assets to the Current Trustee, they did not receive a reasonably equivalent value in exchange for transferring their assets.

106. At the times the Spencers transferred assets to the Initial Trustees and the Current Trustee, they intended to incur—or believed, or reasonably should have believed, that they would incur—debts beyond their ability to pay as they became due.

107. Thus, the transfers from the Spencers to the Initial Trustees and the Current Trustee, as described in paragraph 98 and 99, were fraudulent transfers under Cal. Civ. Code § 3439.04(a)(2).

**COUNT IX**

**Cal. Civ. Code § 3439.05**

**<u>Debt Arising Before Transfer and Insolvency</u>**

108. Plaintiff hereby incorporates and realleges paragraphs 1 through 66 as if fully set forth herein.

109. Spencer's debt to the SEC under its Final Judgment in the Red Rock Action arose before at least some of his asset transfers to the Initial Trustees and the Current Trustee pursuant to the SELT Agreement.

110. Spencer and Kiersten Elliott did not receive reasonably equivalent value for the asset transfers to the Initial Trustees and the Current Trustee described in the preceding paragraph.

111. Spencer was insolvent at the time of the Spencers' transfers of assets to the Initial Trustees and the Current Trustee, or he became insolvent as a result of those transfers.

112. Thus, the Spencers' transfers of assets to the Initial Trustees and the Current Trustee, as described in paragraph 104, were fraudulent transfers under Cal. Civ. Code § 3439.05.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff hereby petitions this Court for an Order providing for:

A. Pursuant to alter-ego liability, the turnover of the proceeds of assets held by the Current Trustee up to the amount Spencer owes the SEC under the Final Judgment, including but not limited to the cash value of insurance policies held by SELT, its automobiles, real estate, and any financial accounts;

B. Alternatively, pursuant to 28 U.S.C § 3306(a)(1), the avoidance of the Fraudulent Transfers to the extent necessary to satisfy the civil penalty and accruing post-judgment interest thereon against Spencer and awarded to the SEC in the Final Judgment;

C. Pursuant to 28 U.S.C. § 3306(a)(2), attachment of all property in the possession, custody, or control of the Current Trustee, and in which the Current Trustee, has a substantial non-exempt interest, up to the value of the assets transferred to and/or for the benefit of the Current Trustee, not to exceed the civil penalty and accruing post-judgment interest thereon against Spencer and awarded to the SEC in the Final Judgment;

D. Pursuant to 28 U.S.C. § 3306(a)(2), garnishment of bank and/or securities accounts maintained by the Current Trustee, up to the value, not to exceed the civil penalty and accruing post-judgment interest thereon against Spencer and awarded to the SEC in the Final Judgment;

E. Pursuant to 28 U.S.C. § 3306(a)(3), any other relief the circumstances may require;

F. Pursuant to 28 U.S.C. § 3307(b), a money judgment against the Current Trustee, in an amount equal to the value of all Fraudulent Transfers to the Initial Trustees and the Current Trustee, to the extent necessary to satisfy the civil penalty and accruing post-judgment interest thereon against Spencer and awarded to the SEC in the Final Judgment. In accordance with 28 U.S.C. § 3307(c), the value of such assets transferred, and therefore the amount of the money judgment, should be the value of the assets at the time of the respective transfers, subject to adjustment as the equities may require;

G. Pursuant to 28 U.S.C. § 3011, the SEC seeks the statutory ten percent surcharge on the amount of Spencer's Final Judgment civil money penalty debt to which it is entitled.

H. Pursuant to California Civil Code § 3439.07(a)(1), avoidance of the Fraudulent Transfers to the extent necessary to satisfy the disgorgement set forth in the Final Judgment, including prejudgment and post-judgment interest, awarded against Spencer in the Final Judgment;

I. Pursuant to California Civil Code § 3439.07(a)(2), an attachment or other provisional remedy against the assets Spencer transferred to the Initial Trustees and assets transferred to the Current Trustees or other property of Paul Elliott, as Trustee, as available under applicable law, up to the amount of disgorgement, prejudgment interest and post-judgment interest awarded against Spencer in the Final Judgment;

J. Pursuant to California Civil Code § 3439.07(a)(3)(A), an injunction against further disposition by the Current Trustee of any assets, up to the amount of disgorgement, prejudgment interest and post-judgment interest awarded against Spencer in the Final Judgment;

K. Pursuant to California Civil Code § 3439.07(a)(3)(C), any other relief the circumstance may require up to the amount of disgorgement, prejudgment interest and post-judgment interest awarded against Spencer in the Final Judgment;

L. Pursuant to California Civil Code § 3439.07(b), attachment of the assets

held by the Current Trustee, where the remedy of attachment is available under applicable law, up to the amount of disgorgement, prejudgment interest and post-judgment interest awarded against Spencer in the Final Judgment; and

M. Pursuant to California Civil Code § 3439.07(c), a levy on the assets held by the Current Trustee or their proceeds up to the amount of disgorgement, prejudgment interest and post-judgment interest awarded against Spencer in the Final Judgment.

**JURY DEMAND**

The Commission hereby requests a trial by jury.

Respectfully submitted,

Dated: October 29, 2026

*/s/ Maureen Peyton King*

Attorney for Plaintiff (pro hac to be submitted)
Securities and Exchange Commission
100 Pearl Street, Room 20-100
New York, New York 10004
Email: kingmp@sec.gov
Telephone: 212.336.0111